IN THE SUPERIOR COURT OF GUAM:

| | |
|---|---|
| JAY MATTHEW STRADER,<br><br>Petitioner,<br><br>vs.<br><br>CIVIL SERVICE COMMISSION, OFFICE OF THE ATTORNEY GENERAL,<br><br>Respondents. | Special Proceedings Case No. **SP0061-25**<br><br>**DECISION AND ORDER DENYING PETITION FOR JUDICIAL REVIEW** |

Petitioner Jay Matthew Strader asks the Court to reinstate his dismissed grievance appeal before the Civil Service Commission. The CSC found that Strader failed to exhaust his administrative remedies at the agency level; Strader counters that exhaustion was futile due to individual and systemic bias at his employer, the Office of the Attorney General (OAG). The Court finds that exhaustion was not futile and therefore DENIES Strader's Petition for Judicial Review.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Strader's grievances and the administrative proceedings.

Strader is employed as an attorney at the OAG.[2] In July 2024, the agency relocated his office from the 8th to the 9th floor at its ITC Building location. Thereafter, Strader "began hearing cracking sounds in the walls of two of the executive offices that he was using. The

---

[1] The Court supplements this Decision and Order with additional facts and analysis detailed in a sealed Order filed concurrently herewith.

[2] Following oral arguments on the motion, the Court asked the parties to confirm Strader's status as a current employee. Order for Briefs on Mootness (Sept. 15, 2025). Neither party responded.

## ORIGINAL

cracking was frequent and distracting, and sometimes it was loud enough to raise concern about hearing loss, not least because [he] wore a hearing aid in his left ear." Pet. Jud. Rev. at 2 (Apr. 21, 2025). That same month, he submitted a grievance "that he allowed to lapse because the OAG moved him to another office, next door." *Id.*

On August 21, 2024, Strader's supervisor, Deputy Attorney General Joseph Guthrie, issued a Memorandum to "All 9th Floor Employees", entitled "Noise Discipline." Submission Record on Appeal at E30 (Apr. 21, 2025). Guthrie stated:

> some of our employees are extremely sensitive to noise. . . . Those employees deserve, as we all do, to be able to work in a comfortable environment. Therefore, I would like to officially request the cooperation of all employees on the 9th floor to . . . refrain from purposely/willfully engaging in loud or distracting noises.

*Id.*

On September 25, 2024, Strader filed a Step 2 grievance, again complaining of cracking noise. Pet. Jud. Rev., Ex. G at E35. Two days later, Guthrie responded that the Step 2 grievance was largely similar to Strader's first grievance. Guthrie's response summarized what the OAG had done to address Strader's concerns, which consisted of inspection of his work areas including interior and exterior walls, windows and ceilings; relocation of Strader's office to one where Guthrie had previously worked and not experienced noise; issued the Noise Discipline Memo; and displayed a poster developed by Strader regarding "HEARING AID IN USE." *Id.*, Ex. H at E37-38. Guthrie then explained further steps in response to the Step 2 grievance, including another office relocation away from exterior walls and windows; use of a headset; and an offer for a work-from-home accommodation if recommended by a medical professional. *Id.* Guthrie noted that in the new office, "Your alleged tormentors will not be able to torment you from the floor below, because the room below your new office is a conference room with interior


ORIGINAL

glass windows, making the entire room visible from the hallway." *Id.* Guthrie again asked that

Strader have his hearing aid examined by an audiologist. *Id.* Guthrie concluded:

> Matt, you have alleged in writing that the sounds you are hearing are caused by fellow employees' intent on tormenting you. Frankly, I do not know what, if anything, you are hearing. These sounds do not seem to have detracted from your work, which is acceptable. What concerns me is feelings of animosity you must have toward your fellow staff members you believe are tormenting you. As a manager, I cannot allow such an explosive situation to exist in this office without getting to the bottom of it.
>
> You have filed a grievance. We are now at Step 2. We have arranged for you to be examined by a medical doctor pursuant to the Department of Administration's Personnel Rules and Regulations, Rule 9.002 C. The examination will be paid in full by the Government of Guam. . . . If you refuse to be examined, we will assert, in response to your grievance, your failure, when given the opportunity to do so, to rule out a medical cause for the noises you hear—thus denying us the opportunity to perform a complete investigation of your grievance. . . .

*Id.* at E39.

That same day, Strader submitted another Step 2 grievance, alleging that Guthrie

misrepresented facts and knowingly stated false facts in his September 27 response. *Id.*, Ex. I.

On October 2, 2024, Guthrie responded to Strader's second Step 2 grievance, which he described

to be procedurally improper. However, Guthrie also elaborated on statements in his September

27 Memorandum:

> I used the term tormentor because you claim people in this office are causing you to hear crackling[3] noise. I never said you don't hear crackling. I do believe you hear crackling noise. I only disagree with you about the source of the crackling noise.
>
> I can assure you that I do not know the source of the crackling. My only request is that you join me in searching for the source of the crackling. Toward that end, I have arranged for you to be moved to the other side of the building,

---

[3] Guthrie sometimes describes Strader as complaining of "crackling" noise; however, Strader consistently describes it as "cracking." The Court quotes Guthrie's text as written.

ORIGINAL

so as to separate you from any source of crackling on this side of the building.
Also, I am arranging for you to be seen by a medical professional.

\*\*\*

It may be that you suffer from auditory hallucinations. Lots of people
do. But so long as you get your work done, such auditory hallucinations, even
if unresolvable, would not concern us. However, you blame your fellow
employees for causing the sounds you hear.

I am responsible for the safety of employees in this office. Such
animosity, as it may be a precursor to violence has got to concern me.

*Id.*, Ex. J. Strader again refused Guthrie's request that he submit to a medical examination. *Id.*

In an October 9, 2024 Memorandum, Attorney General Douglas Moylan advised Strader

that he has been scheduled for a "special psychological/medical examination to determine your

ability to perform the major functions of your position." *Id.*, Ex. K. However, Strader again

refused to undergo a medical evaluation. *Id.* at 3.

Instead, on October 11, 2024, Strader filed a grievance appeal with the CSC. *Id.*, Ex. M.

He asserts that, when he filed his appeal, he was unaware that the OAG had already formed a

Grievance Committee to address his grievances. *Id.* at 3.

Also on October 11, 2024, Guthrie issued a Memorandum to Strader acknowledging that

Strader missed his scheduled evaluation due to a "dental appointment, your cold, and the press of

other matters." Submission RA at E46. Guthrie advised of a rescheduled evaluation and warned,

"Your failure to attend may result in disciplinary action taken against you." *Id.*

On October 15, 2024, the Grievance Committee, consisting of OAG employees Fred

Nishihira, Grant Olan, Gloria Rudolph, and Raymond Ilagan, issued its findings. Pet. Jud. Rev.,

Ex. P. The Committee recommended that Strader undergo a medical evaluation to "rule[] out a

medical cause for the noises," to have an audiologist "determine that his hearing aid is working

ORIGINAL

properly," and to again be offered a headset to mitigate noise or be allowed to work home if deemed appropriate by a medical professional. *Id.* at E52.

On October 18, 2024, AG Moylan informed Strader that he concurred with the Grievance Committee's conclusions and recommendations that Strader have his hearing aid inspected by a licensed audiologist and undergo a medical evaluation to rule out medical issues. *Id.*, Ex. O. On October 31, 2024, Guthrie informed Strader by Memorandum that he must secure an appointment with a qualified and duly licensed audiologist, which the OAG will pay, or be subject to disciplinary action. Submission RA at E62. Guthrie notes, "I take it that you find the current location of your office satisfactory, as I have heard nothing to the contrary. Let me know of any problems that arise." *Id.*

On March 20, 2025, the CSC dismissed Strader's grievance appeal because Strader had prematurely filed it before the Grievance Committee rendered its decision. Pet. Jud. Rev., Ex. U.

## B. Complaints Against Other Employees

Strader has also reported that in November 2023, he filed a criminal complaint against Attorney Ray Ilagan. According to a filing he submitted before the CSC, Strader reported: "Employee has alleged a criminal complaint against [Ilagan]. While alone in the elevator at the ITC building with Mr. Ilagan in November 2023, he screamed at a high pitch within feet of my left ear. The tinnitus in that ear became louder afterwards." Submission RA at E57. There is no document demonstrating Ilagan's knowledge of the criminal complaint against him.

## C. Petition for Judicial Review

Strader petitioned this Court for judicial review, requesting that the CSC's dismissal of his grievance appeal be reversed. Pet. Jud. Rev. The OAG responded and argued that Strader failed to exhaust his administrative remedies by filing an appeal before the OAG's Grievance



Committee's decision. Resp. at 3 (May 21, 2025). The Court heard the Petition on July 17 and 24, 2025, and took the matter under advisement.

## II.    <u>LAW AND DISCUSSION</u>

Strader concedes that he filed his grievance appeal before the Grievance Committee rendered a decision on his Step 2 grievance. Pet. Jud. Rev. at 6. He argues that his procedural error can be overlooked because the Grievance Committee's review was futile due to actual bias and systemic bias.

### A. *Story-Bernardo* does not preclude bias as an exception to the doctrine of exhaustion of administrative remedies.

As a preliminary matter, the Court addresses the OAG's argument that *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27, precludes review of Strader's complaints of bias. The OAG contends that *Story-Bernardo* holds that an agency must have issued a decision in order for the issue of futility to be analyzed. In other words, according to the OAG, the presence of bias alone cannot excuse the lack of exhaustion of administrative remedies.

*Story-Bernardo* states that "under certain circumstances, a plaintiff need not exhaust administrative remedies to sue." 2023 Guam 27 ¶ 21. "Under the futility exception, a party need not exhaust administrative remedies if the record reflects that it would be futile to do so." *Id.* ¶ 22 (citing *Barrett-Anderson v. Camacho*, 2015 Guam 20 ¶ 32). Examples of circumstances displaying futility as discussed in *Story-Bernardo* include where the agency lacks jurisdiction or where the agency has made it clear that the process would be futile. *Story-Bernardo*, 2023 Guam 27 ¶ 22.

The Court understands OAG to contend that even if an employee propounds allegations of agency bias, the agency must still render a decision in order for futility to even be evaluated. According to the OAG, because Strader did not wait for the Grievance Committee's decision

ORIGINAL


before filing a grievance appeal, he cannot even argue that such decision derived out of biased decisionmakers.

The Court does not agree with this assessment. In stating that "futility . . . applies only if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case," *Story-Bernardo* was referencing the scenario in which a person attempts to call an administrative process futile because they believed the agency has already declared how it would rule.

That is not the same situation here. Strader's complaint concerns a different exhaustion exception—bias. As an exception to administrative exhaustion, the concept of bias is not discussed in *Story-Bernardo*; however, that does not mean it is not a recognized exception. Bias speaks to a fundamental aspect of administrative review—due process. Indeed, other courts recognize the deprivation of due process to be an exception to the exhaustion doctrine. For example, the United States Supreme Court has acknowledged that bias within an administrative review process renders that review inadequate. *See McCarthy v. Madigan,* 503 U.S. 140, 148 (1992) *superseded by statute on other grounds,* 42 USC § 1997(e). Also, in *Briley v. City of West Covina,* 281 Cal. Rptr. 3d 59, 69 (Ct. App. 2021), the California appellate court held that "the exhaustion requirement is excused if the relevant administrative remedy fails to satisfy the standards of due process. . . . [D]ue process entitles a person seeking administrative review to a reasonably impartial, noninvolved reviewer." *Id. See also Breiner v. State Dental Com'n,* 750 A.2d 1111, 1116 (Conn. App. 2000) ("Agency bias is a ground for meeting the 'futility' requirement.").

These persuasive authorities convince this Court that *Story-Bernardo* does not preclude the consideration of bias as an exception to the exhaustion doctrine.


ORIGINAL

**B. Strader does not demonstrate actual bias by members of the Grievance Committee.**

In evaluating Strader's complaint of bias, the Court adopts the standard in *Briley*, as proposed by Strader:[4] "as a matter of due process, an official whose prior dealings with the employee have created substantial animosity and whose own conduct and character are central to the proceeding may not serve as a decision maker." 281 Cal. Rptr. 3d at 72. Notably, *Briley* established several caveats to this holding: the presence of any conflict between an employee and a reviewer does not render the reviewer disqualified; a decision maker need not be completely insulated from the proceeding to be rendered reasonably impartial; and, "[i]n most cases, an employee will be required to pursue an available administrative remedy, notwithstanding some level of adverse interactions with the ultimate decision makers or prior involvement by them." *Id.* at 71-72.

Strader lodges allegations of bias against two Grievance Committee members: Ilagan and Rudolph. With respect to Ilagan, Strader claims that his criminal complaint against Ilagan would have caused Ilagan to feel significant animosity towards Strader. Strader's arguments fall short, however, because Strader fails to demonstrate in the record that Ilagan had awareness of the criminal report. Moreover, even if Ilagan had knowledge of the complaint, Strader still failed to show that Ilagan's character and conduct were central to these present proceedings. Even assuming that Ilagan yelled at Strader in the elevator, causing an increase in Strader's tinnitus, that event occurred nine months before the relevant grievances and eleven months before the Grievance Committee issued its findings. The Court finds no connection between the alleged

---

[4] The OAG did not propose an alternative method of examining whether bias existed.


ORIGINAL

yelling event and Ilagan's position on the Grievance Committee so as to satisfy the test of Ilagan either having substantial animosity toward Strader, or his conduct being part of the issue.

As for Rudolph, Strader's claims stand even more attenuated. Against Rudolph, then the acting Chief Prosecutor, Strader claims that she would have known about Strader's criminal complaint against Ilagan, which would have rendered her unable to exercise an impartial judgment. Moreover, Strader claims, Rudolph knew about the criminal complaint and failed to take action to have Ilagan excused from the Grievance Committee.

Again, even *Briley* recognizes that the mere existence of any conflict between an employee and a reviewer does not automatically render the reviewer biased. To be clear, there is no demonstrated "substantial animosity" let alone conflict between Strader and Rudolph. In fact, there is no evidence that Rudolph, as acting Chief Prosecutor, knew that Strader filed a criminal complaint. However, even if she did, Strader fails to demonstrate that she held substantial animosity towards Strader (or vice versa). She also had no role in the events leading up to his grievances so as to cause this Court to believe her own conduct was at issue.

Thus, under the *Briley* standard proposed by Strader, he has not demonstrated that members of the Grievance Committee possessed actual bias against him.

## C. Strader does not demonstrate systemic bias.

Strader posits that a broader, systemic bias justifies rendering the exhaustion of administrative remedies futile. According to Strader, as employees of the OAG and subordinate to AG Moylan and Guthrie, the members of the Grievance Committee have a financial interest in supporting Guthrie's decisions. Strader contends that this financial interest develops into a conflict of interest.

ORIGINAL

In support of his position on systemic bias, Strader cites just two cases—*Briley*, 281 Cal. Rptr. 3d 59 and *Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008). The latter case concerns corporations; thus, the Court finds it unhelpful to this analysis. As for *Briley*, the California court recognized that administrative proceedings are informal, and that persons complained of are commonly involved in the grievance process. 281 Cal. Rptr. 3d at 69 (citing *Gai v. City of Selma*, 79 Cal. Rptr. 2d 910, 914 (Ct. App. 1998)) ("The standard of impartiality required at an administrative hearing is less exacting than that required in a judicial proceeding."). "The right to a fair and impartial tribunal is not violated merely because the official who made the initial disciplinary decision has the final say in the administrative process." *Id.* In solving when bias reaches an unacceptable level, the California court determined that relevant factors in examining bias included substantial animosity and the connection between the reviewer's character and conduct to the proceeding. The Court already performed this analysis on particular members of the Grievance Committee and found no merit in the allegations of individual bias.

To the extent *Briley* introduces any test of systemic bias, which it does not do explicitly, the Court infers it to be the following standard: when the "probability of actual bias is too high to be constitutionally tolerable." 281 Cal. Rptr. 3d at 70. Under this benchmark, the Court does not find that the Grievance Committee members' employment predetermined them to possess bias. Again, as conceded in *Briley*, people employed with an agency normally take part in administrative tribunals, and their mere employment does not render them disqualified. Strader introduces no facts beyond the Grievance Committee members' employment and positions under Moylan and Guthrie that would automatically bestow bias.

Nor does the Court find that Guthrie's positions, and later Moylan's positions, were unreasonable. The record displays both individuals' extensive efforts to address Straders' noise



ORIGINAL

concerns, while balancing potential impacts relative to hostility in the workplace. The Court

does not find there to be any evidence that Guthrie or Moylan were biased against Strader;

instead, they appeared to have tried earnestly to keep him on board and content with his

workplace surroundings so that he could continue with his acceptable level of performance.

Since neither Guthrie nor Moylan treated Strader unfairly, even assuming the Grievance

Committee rubber-stamped either person's decisions, there is no bias to be found throughout this

process afforded to Strader.

## III.    CONCLUSION AND ORDER

While the Court finds that bias can justify invoking the futility exception to the

exhaustion of administrative remedies rule, the Court finds that Strader has not established any

bias by any OAG decisionmaker or systemic bias within the OAG. The Court therefore DENIES

Strader's Petition for Judicial Review.

**SO ORDERED, 23 October 2025.**

_____
HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Parties:
Jay Matthew Strader, Esq., Petitioner (self-represented)
Joseph A. Guthrie, Esq., Chief Deputy Attorney General, for Respondent Office of the Attorney
      General
Fred Nishihira, Esq., for Respondent Civil Service Commission

ORIGINAL